# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN DICK, <br><br> Plaintiff, <br><br> v. <br><br> GEORGE CARPENTER, MICHAEL GERLITZ and the VILLAGE of WILMETTE, <br><br> Defendants. | No. 02 C 3038 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Dick ("Dick") has filed a Second Amended Complaint alleging seven instances in which Officer George Carpenter ("Carpenter"), Officer Michael Gerlitz ("Gerlitz"), and the Village of Wilmette ("Wilmette") deprived him of his constitutional rights, in violation of 42 U.S.C. § 1983, during his arrest and subsequent prosecution for possession of controlled substances with intent to deliver. The Circuit Court of Cook County eventually overturned Dick's conviction. Afterwards he filed this action. Gerlitz, Carpenter and the Village of Wilmette have all filed motions for summary judgment. For the following reasons, Defendants' motions are granted in part and denied in part.

**FACTS**

George Carpenter and Michael Gerlitz were officers in the Wilmette police force. In December of 1982, they enlisted the aid of Jeffrey Donahue ("Donahue") as a police informant. On January 17, 1983, Donahue informed the officers that Dick would be driving along a certain route and that the police would find a brown paper bag containing LSD and methamphetamines in Dick's jeep. At the time, Dick already had a criminal record due to his prior arrest for

possession of marijuana. Several officers, including Carpenter, Gerlitz and agent Caesar Tovar of the Metropolitan Enforcement Group ("MEG") stopped the jeep along the route that Donahue described. When they approached the vehicle, a water pipe was visible on the vehicle floor. After searching the jeep, they found the drugs Donahue described in both the grocery bag, as well as additional drugs in Dick's jacket pocket. All three men in the vehicle were taken into custody. Donahue and the other person riding in the vehicle were released without charges. Dick was charged and later convicted of possession of LSD and methamphetamines with intent to deliver.

While in custody, Dick denied any knowledge of the drugs and claims that he told the officers that the drugs belonged to Donahue, who also had a large quantity of those types of drugs at his house. At some point that same day, Donahue had surrendered a large quantity of LSD and methamphetamines. Neither the police nor the prosecution informed Dick's criminal attorney about the drugs confiscated from Donahue.

After giving the police information about several people, Donahue stated that he feared for his personal safety and decided to move to Captiva Island, Florida. He claims he lived in the backseat of a Buick from February through May of 1983. Donahue did not have a personal phone and only received mail by asking for packages with his name at the local post office.

Based on his conversations with the officers involved, the prosecutor told Dick's attorney that there was a reliable informant but that the informant was not an occurrence witness. The contact information for Donahue that Dick's attorney received stated that Donahue's last known address was Captiva Island and that he was working at a hotel on the island. On November 14, 1983, the police department issued a supplemental police report indicating the name of Donahue's employer and that he was living with a friend in Jacksonville, Florida. Dick claims

his attorney looked vigorously for Donahue but was unable to find him. However, he also admits that his attorney thought it would be a waste of time to hire an investigator to find Donahue. According to Dick, the attorney believed that the officers were hiding Donahue, but Dick has no support for that contention. Regardless of the actual reason, Dick's attorney did not pursue Donahue and Donahue did not testify at the trial. When the Circuit Court overturned Dick's conviction, it also found that Donahue was a paid informant and an occurrence witness, whose testimony would have affected the outcome of the case. Once he was released, Dick filed this suit against the people responsible for his imprisonment, alleging violations of his Constitutional rights under § 1983.

**ANALYSIS**

**Summary Judgment**

Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56(c).[1] Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999). In determining whether a genuine issue of material facts exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1] Plaintiff's reply to Defendants' motion for summary judgment also requests reinstatement of their state law claim for malicious prosecution, which I dismissed in my order of March 17, 2003. Because the request for reinstatement is unrelated to Defendants' motion for summary judgment, I decline to resolve the issue here. If he wishes, Plaintiff may bring a new motion requesting such relief so that Defendants will have a sufficient chance to respond.

However, I may not rely upon inadmissible hearsay to oppose the motion. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). If there has been adequate time for discovery and the party bearing the burden of proof has failed to establish an essential element of its case, I must grant summary judgment. *Celotex*, 477 U.S. at 322.

**The Defendant Officers**

In order to prove a claim under § 1983, Dick must establish: "1) [he] held a constitutionally protected right; 2) he was deprived of that right in violation of the Constitution; 3) the defendants intentionally caused the deprivation; and 4) the defendants acted under color of state law." *Schertz v. Waupaca County*, 875 F.2d 578, 581 (7th Cir. 1989). The parties agree that at the time of the arrest Carpenter and Gerlitz worked in the Wilmette Police Department and that their actions in the course of police duty are the subject of this suit, so there is no dispute that they were acting under color of law for the purposes of § 1983. Thus, they must demonstrate that Dick's evidence is not sufficient for a reasonable jury to find that they violated Dick's Constitutional rights.

**False Arrest and Excessive Force**

Despite the general requirements for § 1983 claims, in a false arrest claim, "the actual existence of probable cause to arrest precludes [the suit]." *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992). Probable cause exists if, at the time of the arrest, "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information" warrant a reasonable belief that an offense has been committed. *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989).

In the additional materials they submitted, Carpenter and Gerlitz claim that the statute of limitations for Dick to file a false arrest claim has already elapsed. Section 1983 claims are subject to the forum state's statute of limitations for personal injury claims. *Foryoh v. Hannah-Porter*, 428 F. Supp. 2d 816, 819 (N.D. Ill. 2006). Illinois' statute of limitations for personal injury claims is two years. 735 ILCS § 5/13-202. Therefore the statute of limitations for Dick's false arrest claim is also two years. *Foryoh*, 428 F. Supp. 2d at 819. Although Dick may not recover any damages for an allegedly unconstitutional conviction or sentence until that conviction is actually invalidated, *see Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the statute of limitations to file the false arrest claim still begins to accrue at the time of the arrest. *Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006). Therefore the statute of limitations for Dicks false arrest claims elapsed in early 1985. This case was not filed until 2002.

Under Illinois law, equitable tolling may be applied where Plaintiff "has, in some extraordinary way, been prevented from asserting [his] rights in a timely manner; or the plaintiff asserted [his] rights mistakenly in the wrong forum." *Foryoh*, 428 F. Supp. 2d at 821 (citation omitted). Dick has not offered any evidence that suggests that he meets this criteria. Therefore his false arrest claims are time-barred.

Similarly, Dick's claim that the officers used excessive force during his arrest must also fail. The alleged excessive force occurred during Dick's arrest in 1983 and he has not been prevented from asserting his rights since the statute of limitations began to accrue. Additionally, *Heck* would not apply to his excessive force claim because it only applies to "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid." *Heck*, 512 U.S. at 486. A successful excessive force claim would not have invalidated his drug conviction. He

had two years from the date of his arrest to file that claim, but did not do so. He may not pursue it now.

**Withholding Evidence - False Prosecution**[2]

Dick alleges two instances in which the officers denied him a fair trial by withholding evidence: (1) not disclosing Donahue's exact address or sufficient means of contacting him; and (2) not disclosing that Donahue was also found in possession of the same types of drugs found in Dick's jeep. If he is able to show that the officers suppressed evidence favorable to the defense – either because it was exculpatory or because it had impeachment value – and that the evidence was material at trial, those officers would be liable for a violation of due process under *Brady*. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001); *Ienco v. Angarone*, 291 F. Supp. 2d 755, 760 (N.D. Ill. 2003).

The government may be accused of a *Brady* violation if it "withholds evidence that, had it been disclosed, creates a reasonable probability that the result of the trial would have been different." *Ienco*, 291 F. Supp. 2d at 760. The three concepts that should be considered in determining whether or not evidence has been suppressed are "knowledge, possession and the availability of the information to the defendant." *Id*.

**Donahue's Address**

I have already noted that Dick had the opportunity to use the Donahue's testimony because he was aware of Donahue's whereabouts a month before his trial. The reason Dick was

---

[2] Dick also filed a federal claim alleging malicious prosecution. That claim is dismissed. The existence of a tort claim under state law for malicious prosecution, such as the IL law for malicious prosecution, knocks out any constitutional theory of malicious prosecution. *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001).

aware of Donahue's whereabouts was because the officers issued the supplemental report in November. Once he knew, roughly, where Donahue was located, Dick's attorney could have attempted to track down Donahue himself. Instead he chose not to do so. Evidence is not "suppressed" when it is accessible to a reasonably diligent defendant. *Id*. at 761. By itself, Dick's claim that his attorney believed the police were hiding Donahue is only hearsay and not enough to prove a violation. Dick has not shown that the officers knew of any more information other than what was given to Dick's attorney. The government is not obligated to seek information when it is unaware that the information exists, nor is it obligated to seek information on the defendant's behalf. *Id*. at 760. Therefore, Dick cannot show that the officers suppressed evidence related to Donahue's whereabouts.

**Donahue's Drugs**

Dick also believes that the fact that Donahue was found with a stash of drugs soon after Dick was arrested would have compromised Donahue's credibility at trial. Evidence that Donahue possessed the same types of drugs found in Dick's car would most likely have been favorable to the defense because of its exculpatory or impeachment value and also would have been material to an issue at trial, namely whether or not the drugs in the car actually belonged to Dick. However, Dick still cannot show that the officers suppressed that evidence.

Dick claims that, after his arrest, he informed the police that the drugs belonged to Donahue, who also had additional drugs in his house. Both sides agree that at some point after Dick's arrest, somebody from the task force (possibly MEG agent Tovar) confiscated some amount of drugs from Donahue. Assuming, for the moment, that Dick is correct and that the officers did not know that Donahue possessed additional drugs until Dick informed them, the

7

question here is whether there is a substantive difference between Dick knowing that Donahue had drugs and Dick knowing that the police had actually confiscated those drugs from Donahue. In other words, would the additional information – that the police had confiscated drugs – have changed the outcome of the case?

I do not believe that information about the drug confiscation would have changed the outcome of the trial. Dick claims that he already knew Donahue had drugs, and he had the opportunity to contact Donahue a month before trial. Even if the police were hiding the information about the confiscation, Dick could have elicited testimony on that subject from Donahue if he had brought him in as a witness. He chose not to do so. Importantly, he does not claim that he even followed up with the police to see if they checked on the information he claims to have given them. With a reasonable amount of diligence in either questioning the officers afterwards, Dick would have found out that the government confiscated drugs from Donahue on the day of Dick's arrest.

**Conspiracy**

In order to show a conspiracy, Dick must show: 1) a conspiracy existed; 2) the purpose of the conspiracy was to deprive Dick of his constitutional rights; 3) the person committed an act in furtherance of the conspiracy; and 4) Dick was actually injured as a result. *Alexander v. City of South Bend*, 433 F.3d 550, 556-57 (7th Cir. 2006). Although a conspiratorial agreement may be established by circumstantial evidence, the evidence must be enough for "a reasonable jury [to] conclude that the conspirators had, in fact, reached an understanding that they sought to injure [the plaintiff]." *Id*. at 557.

Dick also is not able to show that both officers engaged in a conspiracy to deprive him of his constitutional rights. Although circumstantial evidence may be sufficient to prove a conspiracy, there is no evidence of any understanding between Carpenter and Donahue to plant evidence. In the deposition transcript, Donahue specifically states that he cannot recall Carpenter ever telling him to put contraband in somebody else's possession. He states that he usually spoke with Gerlitz and does not know what kind of conversations Gerlitz and Carpenter had. A reasonable jury could not find that Carpenter conspired with anybody to deny Dick his constitutional rights. However, based on Donahue's deposition testimony that he had discussions with Gerlitz in which the "spirit of the message" was to set other people up with contraband, Dick may be able to show that Gerlitz reached an agreement with Donahue. Therefore, Gertlitz's motion for summary judgment on the conspiracy claims must be denied.

**Village of Wilmette**

To establish a § 1983 claim against the Village of Wilmette, Dick must prove that the Village caused him to be deprived of a federal right and that the deprivation was the proximate cause of his injuries. *Ineco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002). The deprivation must have resulted from either (1) "express municipal policy," (2) "widespread custom," or (3) "deliberate act of a decision-maker with final policy-making authority." *Id.* Mere allegations about the municipality's customs are insufficient, because Wilmette cannot be liable under a *respondeat superior* theory for only having employed a tortfeasor. *Ineco*, 286 F.3d at 1001; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, Dick must provide material evidence showing that the officers were acting pursuant to official custom or policy. *Ienco*, 286 F.3d at 1001. He has not done so. The officers' actions towards Plaintiff on that one

occasion are insufficient to establish liability against Wilmette. *Id.* (citing *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) (ordinarily a single incident does not establish custom to give rise to *Monell* liability)). Therefore I grant summary judgment in favor of Wilmette.

For the aforementioned reasons, the Village of Wilmette's motion for summary judgment is granted, Officer Carpenter's motion is granted, and Officer Gerlitz's motion is granted in part and denied in part.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 29, 2006